# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT JACKSON
### Assigned on Briefs October 2, 2012

## STATE OF TENNESSEE v. HARRY PEARSON

**Appeal from the Criminal Court for Shelby County**
No. 10-07805     W. Otis Higgs, Jr., Judge

No. W2011-02598-CCA-R3-CD  - Filed November 16, 2012

Appellant, Harry Pearson, was indicted, tried, and convicted of especially aggravated kidnapping and aggravated robbery, for which he received sentences of thirty years and twenty years, respectively.  Appellant challenges the sufficiency of the convicting evidence. Following our review, we affirm the judgments of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgments of the Criminal Court Affirmed**

ROGER A. PAGE, J., delivered the opinion of the court, in which JAMES CURWOOD WITT, JR. and JEFFREY S. BIVINS, JJ., joined.

Charles Mitchell, Memphis, Tennessee, for the appellant, Harry Pearson.

Robert E. Cooper, Jr., Attorney General and Reporter; David H. Findley, Senior Counsel; Amy P. Weirich, District Attorney General; and Pam Fleming, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION

### I.  Facts

A Shelby County grand jury indicted appellant and the co-defendant, Jeffrey Bensley, for the especially aggravated kidnapping and aggravated robbery of the victim, Steven Moorhead.[1]  A jury convicted appellant of both offenses.  The trial court sentenced appellant to thirty years as a violent offender for especially aggravated kidnapping and twenty years

---

[1] The record does not contain a motion to sever; however, it is clear that the co-defendant was not tried jointly with appellant.

as a multiple offender for aggravated robbery and ordered that the sentences run concurrently with each other.

The State first presented the victim as a witness at trial. The victim had relocated to Memphis on May 1, 2010, and was temporarily living at the Calvary Rescue Mission. Appellant was also a temporary resident at the mission. The victim testified that he and appellant would eat breakfast together at the shelter. The victim would then drive appellant around town to buy heroin. The victim would park somewhere so appellant could "shoot up" in the car. Appellant helped the victim become familiar with Memphis by showing him where he could get food and how he could survive being homeless in the city. Appellant asked the victim to "help [him] out" when the victim received his social security disability check. The victim agreed, thinking that it would be nice to repay appellant for helping him.

On May 19, 2010, the victim planned to pick up his social security check from the shelter when the mail arrived around 2:00 p.m., cash the check, and give appellant $100 at the shelter that evening. That morning, the victim encountered the co-defendant at the downtown library. The victim knew the co-defendant through appellant. The co-defendant told the victim that appellant was looking for him. Shortly thereafter, the victim saw appellant on the street. The two men entered the victim's vehicle, and appellant asked the victim to pick up the co-defendant. The victim drove to the library and picked up the co-defendant. They "killed time" until the victim could receive his check from the shelter. After the victim received his check, the three men went to Ace Cash Express so he could cash it. The victim gave appellant $100, kept $80 in cash for himself, and deposited the remainder of the check on his debit card. They all left together in the victim's car and drove to the home of the co-defendant's mother to retrieve a tent.

When the three men arrived at the residence, the victim turned off the ignition. Appellant turned around to the co-defendant, who was in the backseat, and asked if he was "ready." Appellant then grabbed the victim's right forearm with both hands, and the co-defendant held a knife and duct tape. The victim recognized the knife as belonging to appellant. The victim began to struggle, at which time the co-defendant struck a "glancing blow" with the knife to the victim's collarbone and hit the victim in the face. Appellant then placed the victim in a "choker hold." As he started to lose consciousness, the victim assured appellant he would cooperate. The victim testified that he wanted to be sure he remained conscious. Appellant "let up a little bit," and the co-defendant taped the victim's legs together and taped his wrists together behind his back. Appellant and the co-defendant then reclined the driver's seat and had the victim slide into the backseat of his car. Appellant sat in the driver's seat, and the co-defendant entered the rear passenger side. He held a knife to the victim's rib cage. The co-defendant then removed the victim's wallet and took his debit card, cash, and cellular telephone.

Appellant drove the victim's car to a nearby store with an automated teller machine ("ATM") and asked the victim for his personal identification number. Appellant entered the store and withdrew $300 from the victim's account using his debit card. The victim overheard appellant talking on the telephone, making arrangements to purchase heroin. Appellant drove to another location and purchased eleven bags of heroin for $100. Appellant told the victim that the victim should leave Memphis and not return. When the victim did not respond to appellant, appellant reached from the front seat, "backhanded" the victim, and asked if the victim understood. Appellant then drove to the parking lot of the Bass Pro Shop, turned off the ignition, removed the keys, placed them on the floorboard, and exited the vehicle with the co-defendant. After approximately ten minutes had passed, the victim opened the back seat door, exited, and screamed for help. Individuals in a gold Honda stopped to render aid and tried to remove the duct tape with a key. Another man in a white car arrived and cut the victim free with a knife. One of the individuals summoned the police, who arrived ten to fifteen minutes later.

On cross-examination, the victim admitted he had previously been to the residence of the co-defendant's mother. The victim, appellant, and the co-defendant had gone there to smoke crack cocaine together. The victim denied that he was involved with appellant, the co-defendant, and others in a "boost ring" in which they would steal Red Bull energy drinks from Walmart stores. He also denied that he, appellant, and the co-defendant staged the offenses in question to obtain restitution from the Victim's Compensation Fund. The victim admitted that approximately six months after the incident, he and the co-defendant ate dinner at the same table at a homeless shelter but stated he was unaware that the co-defendant was seated at that table until after he was seated.

On redirect examination, the victim testified that he wondered whether he was going to live through the ordeal and was concerned that appellant and the co-defendant would stab him before they left the car.

Teresa Quintero, the driver of the gold Honda, testified that she encountered the victim in the parking lot of the Bass Pro Shop. She observed that he appeared as though he had been in a fight: his hair was messy, his shirt was torn, and he was bleeding. She telephoned 9-1-1 while her son attempted to unwrap the duct tape. Ms. Quintero then located a pair of fingernail clippers in her glove compartment that she used to clip the edge of the tape and remove it. They had just removed the duct tape when police arrived.

Russell Young testified that he was at the Bass Pro Shop on the day in question and observed two men running away from a black car as he was leaving the parking lot. He testified, "[Y]ou could tell by the look on their face[s] or the way they were running [that] something was going on." Mr. Young followed the two men around the corner until they

stopped at a Motel 6 and entered the lobby. He then returned to the Bass Pro Shop and asked the victim what had happened. Mr. Young remained on the scene and gave police a statement. He also identified appellant in court.

James Culpepper, an officer with the Memphis Police Department, responded to the robbery call at the Bass Pro Shop parking lot. When he arrived, he observed that the victim was visibly shaken, frightened, and upset and still bore evidence of duct tape around his wrists and ankles. The victim provided the names of the suspects and a description of what they were wearing. Mr. Young returned to the scene and informed police of the direction in which the suspects fled.

Richard Lunati with the Memphis Police Department responded to the call for assistance at the Bass Pro Shop parking lot. He then proceeded to the Motel 6, the location that Mr. Young had witnessed the suspects enter. Officer Lunati ascertained the room number of the motel room they rented and knocked on the door. He subsequently detained appellant and the co-defendant, recovering a sum of money during the frisk of appellant.

Lyndi Sugg with the district attorney general's office testified that she was employed as a victim-witness coordinator. She stated that the victim had not completed the necessary paperwork to obtain compensation as the victim of a crime. Moreover, he would not have been entitled to receive compensation directly; any compensation is sent directly to the provider of medical care in a case involving bodily injury.

Officer David Galloway with the Memphis Police Department Crime Scene Division photographed appellant's room at the Motel 6. Officers also collected evidence, including a pocket knife, a bag, and some vitamins.

Officer Lee Wiggins of the Memphis Police Department testified that officers obtained a search warrant for the hotel room at the Motel 6. During the search, he recovered the receipt from the motel room and a sum of money. At trial, he identified $180 contained in one envelope and $148 contained in a second envelope that he recovered from the co-defendant and appellant, respectively. Officer Wiggins recovered three empty foil packets that would be used to package heroin, a spoon with drug residue on it, and a plastic bag with marijuana residue in it. He also recovered 2.4 grams of heroin from the co-defendant and 0.66 gram from appellant.

The State rested its case and the defense presented no evidence. Following deliberations, the jury returned verdicts of guilty on both counts of the indictment. The State and defense counsel reached an agreement on appellant's sentence, recommending to the trial court a sentence of thirty years at 100% for especially aggravated kidnapping and twenty

years as a multiple offender at 35% for aggravated robbery. The trial court accepted the agreed-upon sentence.

## II. Analysis

Appellant raises one issue for our review: sufficiency of the convicting evidence. The standard for appellate review of a claim challenging the sufficiency of the State's evidence is "whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979) (citing *Johnson v. Louisiana*, 406 U.S. 356, 362 (1972)); *see* Tenn. R. App. P. 13(e); *State v. Davis*, 354 S.W.3d 718, 729 (Tenn. 2011). To obtain relief on a claim of insufficient evidence, appellant must demonstrate that no reasonable trier of fact could have found the essential elements of the offense beyond a reasonable doubt. *See Jackson*, 443 U.S. at 319. This standard of review is identical whether the conviction is predicated on direct or circumstantial evidence, or a combination of both. *State v. Dorantes*, 331 S.W.3d 370, 379 (Tenn. 2011); *State v. Brown*, 551 S.W.2d 329, 331 (Tenn. 1977).

On appellate review, "'we afford the prosecution the strongest legitimate view of the evidence as well as all reasonable and legitimate inferences which may be drawn therefrom.'" *Davis*, 354 S.W.3d at 729 (quoting *State v. Majors*, 318 S.W.3d 850, 857 (Tenn. 2010)); *State v. Williams*, 657 S.W.2d 405, 410 (Tenn. 1983); *State v. Cabbage*, 571 S.W.2d 832, 835 (Tenn. 1978). In a jury trial, questions involving the credibility of witnesses and the weight and value to be given the evidence, as well as all factual disputes raised by the evidence, are resolved by the jury as trier of fact. *State v. Bland*, 958 S.W.2d 651, 659 (Tenn. 1997); *State v. Pruett*, 788 S.W.2d 559, 561 (Tenn. 1990). This court presumes that the jury has afforded the State all reasonable inferences from the evidence and resolved all conflicts in the testimony in favor of the State; as such, we will not substitute our own inferences drawn from the evidence for those drawn by the jury, nor will we re-weigh or re-evaluate the evidence. *Dorantes*, 331 S.W.3d at 379; *Cabbage*, 571 S.W.2d at 835; *see State v. Sheffield*, 676 S.W.2d 542, 547 (Tenn. 1984). Because a jury conviction removes the presumption of innocence that appellant enjoyed at trial and replaces it with one of guilt at the appellate level, the burden of proof shifts from the State to the convicted appellant, who must demonstrate to this court that the evidence is insufficient to support the jury's findings. *Davis*, 354 S.W.3d at 729 (citing *State v. Sisk*, 343 S.W.3d 60, 65 (Tenn. 2011)).

To sustain a conviction for especially aggravated kidnapping as charged in the indictment, the State must have proven beyond a reasonable doubt that appellant knowingly removed or confined the victim unlawfully so as to interfere substantially with his liberty and that appellant accomplished the false imprisonment "with a deadly weapon or by display of

any article used or fashioned to lead the victim to reasonably believe it to be a deadly weapon." Tenn. Code Ann.§§ 39-13-302, -305 (2010).

The evidence, viewed in the light most favorable to the State, demonstrates that the victim willingly transported appellant and the co-defendant to the residence of the co-defendant's mother. However, once there, appellant and the co-defendant forcibly restrained the victim, threatened him with and cut him with a knife, and bound his wrists and ankles with duct tape. After robbing him, appellant drove the victim's car, with the victim still inside, to another location to purchase drugs and to a third location to use the victim's debit card. The jury's verdict of guilty credits the State's proof. We conclude that the evidence was sufficient to establish that appellant confined the victim unlawfully, substantially interfered with his liberty, and accomplished the act by use of a deadly weapon.

To sustain a conviction for aggravated robbery as charged in the indictment, the State must have proven beyond a reasonable doubt that appellant committed "intentional or knowing theft of property from" the victim "by violence or putting the [victim] in fear" and "[a]ccomplished [the theft] with a deadly weapon or by display of any article used or fashioned to lead the victim to reasonably believe it to be a deadly weapon." Tenn. Code Ann.§§ 39-13-401, -402 (2010).

Viewing the evidence in the light most favorable to the State, we again conclude that the convicting evidence was sufficient to support appellant's conviction. The victim testified that appellant stole money from him, and officers testified that they recovered a sum of money in appellant's motel room. The victim testified that appellant used a knife, and officers recovered said knife in the motel room. The victim testified that he was afraid he might be stabbed before appellant and the co-defendant exited his vehicle. This evidence supports the jury's verdict.

Appellant argues that the evidence should be deemed insufficient because the victim lacked credibility. Issues regarding credibility of witnesses are resolved by the jury, and we will not re-evaluate the evidence on that basis. *Bland*, 958 S.W.2d at 659.

In addition, although not raised by appellant, we review whether, under the facts of this case, the dual convictions for aggravated robbery and especially aggravated kidnapping constitute plain error. We take note that this court may review an "error involving a substantial right [that] more probably than not affected the judgment or would result in prejudice to the judicial process." Tenn. R. App. P. 36(b). "When necessary to do substantial justice, an appellate court may consider an error that has affected the substantial rights of a party at any time, even though the error was not raised in the motion for a new trial or assigned as error on appeal." *Id.*

The Tennessee Supreme Court recently addressed the proper analysis of cases involving a separate conviction for kidnapping when accompanied by another felony conviction. *State v. White*, 362 S.W.3d 559, 578 (Tenn. 2012). In *White*, the court addressed the application of the due process test to convictions for kidnapping and an accompanying felony. The court held:

> the legislature did not intend for the kidnapping statutes to apply to the removal or confinement of a victim that is essentially incidental to an accompanying felony, such as rape or robbery. This inquiry, however, is a question for the jury after appropriate instructions, which appellate courts review under the sufficiency of the evidence standard as the due process safeguard.

*Id.* at 562. The court concluded that our kidnapping offenses "evince a legislative intent to punish as kidnapping only those instances in which the removal or confinement has criminal significance above and beyond that necessary to consummate some underlying offense, such as robbery or rape." *Id.* at 577. According to the supreme court, a jury instruction requiring a "determination of whether the removal or confinement is, in essence, incidental to the accompanying felony or, in the alternative, is significant enough, standing alone, to support a conviction" is needed to ensure constitutional due process is given to defendants charged with kidnapping and an accompanying felony. *Id.* at 578.

In this case, the trial court instructed the jury with respect to especially aggravated kidnapping using the previous pattern jury instruction.[2] Thus, the trial court erred in its charge to the jury. However, because appellant did not raise a *White* issue, we must analyze this issue under our plain error standard of review. Our supreme court formally adopted the following test for reviewing claims of plain error:

> The Court of Criminal Appeals has developed five factors to consider when deciding whether an error constitutes "plain error" in the absence of an objection at trial: "(a) the record must clearly establish what occurred in the trial court; (b) a clear and unequivocal rule of law must have been breached; (c) a substantial right of the accused must have been adversely affected; (d) the accused did not waive the issue for tactical reasons; and (e) consideration of the error is 'necessary to do substantial justice.'"

---

[2] Of course, the trial court used the approved instruction from the criminal pattern jury instructions in effect at the time of trial.

*State v. Smith*, 24 S.W.3d 274, 282 (Tenn. 2000) (quoting *State v. Adkisson*, 899 S.W.2d 626, 641-42 (Tenn. Crim. App. 1994)). All five factors must be established by the record before a court will find plain error. *Id.* Complete consideration of all the factors is not necessary when clearly at least one of the factors cannot be established by the record.

Based on our review, we determine that consideration of this issue under plain error review is not "necessary to do substantial justice." *Id.* The jury convicted appellant of especially aggravated kidnapping and aggravated robbery. The proof established that appellant and the co-defendant lured the victim to the residence of the co-defendant's mother under the guise of picking up a tent. While in the driveway of the residence, appellant and the co-defendant bound the victim with duct tape, threatened him with a knife, struck the victim's collarbone with a knife, and hit the victim in the face. They stole the victim's cellular telephone and wallet, which contained his debit card and cash. Appellant drove to an ATM machine and demanded the victim's personal identification number. After driving around Memphis, they abandoned the victim in his vehicle while he was still bound with duct tape. Based on the facts of this case, the failure to charge the jury that confinement of the victim for the especially aggravated kidnapping must not have been essentially incidental to the aggravated robbery is harmless beyond a reasonable doubt. *See White*, 362 S.W.3d at 580 n.20. Accordingly, appellant's dual convictions of especially aggravated kidnapping and aggravated robbery are affirmed.

## CONCLUSION

Our review of the record reveals no reversible error in the trial court proceedings. Accordingly, we affirm the judgments of the trial court.

_____
ROGER A. PAGE, JUDGE